726 A.2d 975 (1999)
320 N.J. Super. 74
James BOLDT, Josephine Menna, and Kevin Davis, Infant by his Guardian ad Litem, Annie Van Deventer, as parent and natural guardian of infant, Kevin Davis, on behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants,
v.
CORRESPONDENCE MANAGEMENT, INC.; Community Medical Center; Charles E. Bellingham, M.D.; Coastal Urology Associates, Talarico-Bellingham-Linn Urology Group, P.A.; Monmouth Family Medicine Group, P.A., Defendants-Respondents,
and New Jersey State Department of Health, Certificate of NEED AND Acute Care Licensor Program; New Jersey State Board of Medical Examiners, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1998.
Decided April 12, 1999.
*976 Herbert Rubin (Herzfeld & Rubin) of the New York Bar, admitted pro hac vice, New York City, for plaintiffs-appellants (Chase Kurshan Suhr Herzfeld & Rubin and Mr. Rubin, attorneys; Jeffrey L. Chase and J. Nicholas Suhr, Howell, on the brief).
Stacy L. Moore, Jr., Marlton, for defendant-respondent Correspondence Management, Inc. (Parker, McCay & Criscuolo, attorneys; Mr. Moore, on the brief).
Frank R. Ciesla, Middletown, for defendant-respondent Community Medical Center (Giordano, Halleran & Ciesla, attorneys; Mr. Ciesla, of counsel; Patrick S. Convery, on the brief).
Orlovsky, Grasso & Bolger, Toms River, for defendants-respondents Monmouth Family Medicine Group, P.A.; Charles E. Bellingham, M.D.; Coastal Urology Associates and Talarico-Bellingham-Linn Urology, P.A. (Susan E. Knoff, on the brief).
Before Judges LONG, WEFING and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
These appeals[1] involve an issue of alleged overcharging for medical records and require us to determine the appropriate forum for resolution of the factual disputes raised in this litigation. One of the plaintiffs, Kevin Davis, alleges that he was overcharged for medical records by defendant Community Medical Center (CMC), a medical facility *977 regulated by defendant New Jersey State Department of Health, and CMC's agent, Correspondence Management, Inc. (CMI), a medical record copying service. The additional plaintiffs, Josephine Menna and James Boldt, allege overcharging by defendants Talarico-Bellingham-Linn Urology, P.A.; Dr. Charles Bellingham of Coastal Urology Associates; and Monmouth Family Medicine Group, P.A., (the Doctors) respectively. The Doctors are regulated by defendant New Jersey State Board of Medical Examiners.
Plaintiffs filed an action for damages and other relief for alleged photocopying overcharges by health care providers in violation of N.J.A.C. 8:43G-15.3(d) by CMC, and N.J.A.C. 13:35-6.5(c)4 by the Doctors. Plaintiffs filed a second amended complaint on July 3, 1997. Denominating the action as a class action, plaintiffs alleged violations of the regulations and, together with compensatory damages, sought 1) an order enjoining defendants from further violations and enjoining the New Jersey State Board of Medical Examiners to enforce the regulations; 2) treble damages for violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, and an order enjoining defendants from further violations; 3) punitive damages and damages for unjust enrichment.
Both the Department of Health and Board of Medical Examiners promulgated regulations concerning the charges for duplication of medical records. The regulations are not identical; they establish different standards and cost considerations for the respective regulated entities. Despite these differences, the trial judge granted summary judgment in favor of all defendants and held that plaintiffs must exhaust administrative remedies before proceeding with this action.
We conclude that the trial judge erred in granting summary judgment and requiring an exhaustion of administrative remedies as to the Doctors. We affirm the dismissal, without prejudice, of the action against the CMC and CMI for failing to exhaust administrative remedies.
For ease of understanding, we will treat the claims against the Doctors and against CMC and CMI separately, for they are, indeed, separate actions involving different parties, regulations and standards. As we will discuss, infra, they should have been pled separately in different actions.

A.
Boldt requested photocopies of medical records from defendant Bellingham, a member of Coastal Urology Associates. He was charged fifty dollars for twenty-three pages of records. He ordered additional records from defendant Monmouth Family Group, P.A., and was charged fifty-five dollars for twenty-nine pages of records. Menna was charged fifty dollars for sixteen pages of records from defendant Talarico-Bellingham-Linn Urology, P.A.
As we have noted, the Board of Medical Examiners regulates the charges for copying medical records. N.J.A.C. 13:35-6.5(c)4 provides:
Licensees may require a record request to be in writing and may charge a fee for the reproduction of records, which shall be no greater than $1.00 per page or $100.00 for the entire record, whichever is less. (If the record requested is less than 10 pages, the licensee may charge up to $10.00 to cover postage and the miscellaneous costs associated with retrieval of the record.) If the licensee is electing to provide a summary in lieu of the actual record, the charge for the summary shall not exceed the cost that would be charged for the actual record.
The alleged violations of this regulation form the basis of the complaint against the Doctors.
Following the filing of the complaint, the Doctors moved for summary judgment arguing that any complaint regarding the Doctors' overcharging must be addressed to the Board of Medical Examiners. In response to certifications supporting plaintiffs' factual allegations of violations of the regulation, the Doctors neither denied nor explained the charges alleged by plaintiffs to be in excess of the $1.00 per page limit. Despite the apparent violation of the regulation and the absence of any factual dispute, the judge granted defendants' motion for summary judgment requiring exhaustion of administrative *978 remedies. No explanation was set forth as to what information would be developed at any administrative hearing. The judge focused his attention on the claims against CMC and CMI and provided no reasons why the disparate claims were being treated the same. We find no basis for the granting of the Doctors' motion for summary judgment and conclude it was error.
Plaintiffs assert that the order granting summary judgment to "all defendants" and denying the plaintiffs' cross-motion for class certification cannot apply to the Doctors. The order speaks of dismissal with prejudice based on a determination that "defendants have appropriately charged for copies of medical records on a `per admission basis' pursuant to the applicable regulations." This language, referring to hospital admissions, relates to N.J.A.C. 8:43G-15.3(d), the regulation governing hospitals, rather than N.J.A.C. 13:35-6.5(c)4, governing doctors.
The second order appealed from, dismissing all counts of plaintiffs' complaint without prejudice pursuant to R. 4:6-2 for failure to exhaust administrative remedies, is also inapplicable to the Doctors. Plaintiffs note that the trial judge based his ruling entirely on the need for Department of Health expertise in interpreting the term "actual costs," a term contained in N.J.A.C. 8:43G-15.3(d), and absent in N.J.A.C. 13:35-6.5(c)4.[2]
N.J.A.C. 13:35-6.5(c)4 simply provides for photocopying charges of up to $1.00 per page for copying medical records. Plaintiffs alleged the violation of this regulation, with amounts charged in excess of this figure. The doctors neither deny this, nor explain the charges alleged by plaintiffs to be in excess of the $1.00 per page figure. Thus plaintiffs argue that the record supports a finding that the Doctors violated N.J.A.C. 13:35-6.5(c)4 as a matter of law.[3]
The Doctors' primary argument is that the Board of Medical Examiners, not the courts, has "original jurisdiction" for dealing with the issues presented, based on its expertise, an issue not addressed by the trial judge. We reject the Doctors' argument for the reasons set forth infra.
On its face, the Doctors' charges violated the regulation. The charges exceeded $1.00 per page and no explanation is provided otherwise. Clearly, the "competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995). We conclude that the Doctors' motion for summary judgment should properly have been denied.

B.
For the requested photocopies from CMC, which consisted of 259 pages, plaintiff Davis[4] was charged a fee of one dollar per page as well as ten dollars in search fees and $4.13 in sales tax for a total of $273.13. Davis' request for medical records included twentyseven separate admissions.
Plaintiff Davis asserts that the fees charged by CMC violated N.J.A.C. 8:43G-15.3(d). This regulation provides:
If a patient or the patient's legally authorized representative requests, in writing a copy of his or her medical record, a legible, written copy of the record shall be furnished at a fee based on actual costs. ... One copy of the medical record from an individual admission shall be provided to the patient or the patient's legally authorized representative within 30 days of request, in accordance with the following:
1. The fee for copying records shall not exceed $1.00 per page or $100.00 per record for the first 100 pages. For records *979 which contain more than 100 pages, a copying fee of no more than $0.25 per page may be charged for pages in excess of the first 100 pages, up to a maximum of $200.00 for the entire record;
2. In addition to per page costs, the following charges are permitted:
i. A search fee of no more than $10.00 per patient per request;
ii. A postage charge of actual costs for mailing, not to exceed $5.00. No charges shall be assessed other than those permitted in (d)1 and 2 above.
3. The hospital shall establish a policy assuring access to copies of medical records for patients who do not have the ability to pay; and
4. The hospital shall establish a fee policy providing an incentive for use of abstracts or summaries of medical records. The patient or his or her representative, however, has a right to receive a full or certified copy of the medical record.
After the filing of the complaint and before discovery, defendants CMC and CMI moved for summary judgment. Certifications submitted in support of their motions described the record production process as involving a) retrieval of the hard copy and microfilmed records by the medical records department, including a check for validity of the request and authorization; b) turnover of the records to the copying service for reproduction and billing; and c) reproduction and forwarding of the records to the requesting party. Included in the regulation is the perpage limitation of one dollar per page together with a ten dollar retrieval fee. The per page limitation is a fee based on actual costs.
On defendant's motion for summary judgment, the trial court determined that Davis must exhaust his administrative remedies prior to proceeding in the Law Division. We agree.
The narrow issue in this dispute, aside from the alleged overcharging, involves the definition of a term used in N.J.A.C. 8:43G-15.3(d)"actual costs." The issue then is whether it is necessary to require the Department of Health to define this term or whether, in this litigation, the Law Division can interpret "actual costs" as plaintiffs proceed with their cause of action. In analyzing this issue, we deem it noteworthy that Davis does not attack the validity of the regulation but suggests that defendants CMC and CMI have incorrectly interpreted it.
We begin our analysis by recognizing that the application of the doctrine of exhaustion of administrative remedies is not absolute but a matter of discretion to be exercised after a careful weighing process in the interest of justice. Borough of Matawan v. Monmouth County. Bd. of Taxation, 51 N.J. 291, 296, 240 A.2d 8 (1968).
To determine "the interests of justice," courts conduct a balancing test. Favoring the application of the doctrine are three important factors:
(1) the [exhaustion] rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts.
[Abbott v. Burke, 100 N.J. 269, 297-98, 495 A.2d 376 (1985).]
The Court went on to enumerate the exceptions to the doctrine of exhaustion of administrative remedies, some of which do not precisely lend themselves to objective evaluation:
1) when only a question of law need be resolved;
2) when the administrative remedies would be futile;
3) when irreparable harm would result;
4) when jurisdiction of the agency is doubtful;
5) when an overriding public interest calls for a prompt judicial decision.
[Id. at 298, 240 A.2d 8(citations omitted.)]
Abbott involved school funding issues of constitutional dimensions not relevant here. We deem none of the exceptions to apply here as we are dealing with an issue between essentially *980 two private parties, one of whom is subject to administrative regulation.
To resolve the application of the exhaustion doctrine, we must also consider the "doctrinally-related" principle of primary jurisdiction. Boss v. Rockland Elec. Co., 95 N.J. 33, 40, 468 A.2d 1055 (1983). As is the exhaustion of remedies doctrine, primary jurisdiction is
concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.
[Ibid. (citing United States v. Western Pac. R.R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 164-65, 1 L. Ed.2d 126, 132 (1956), cited in Woodside Homes, Inc. v. Morristown, 26 N.J. 529, 541, 141 A.2d 8 (1958).)]
In other words, under the doctrine of primary jurisdiction, the case is properly before the court, but agency expertise is required to resolve the questions presented. See IPCO Safety Corp. v. WorldCom, Inc., 944 F.Supp. 352, 355 (D.N.J.1996) (noting that under primary jurisdiction, the court "refers `a matter otherwise within its original jurisdiction to an appropriate administrative agency'") (citations omitted). When exhaustion of remedies is invoked, on the other hand, the court is saying the case ought to have been brought before the administrative agency in the first place.
Boss v. Rockland Electric Co., supra, concerned a longstanding utility easement where the affected utility company sought to cut down certain trees on residential property, rather than trim and prune them, as it had done in the past. Id. at 36-37, 468 A.2d 1055. To fully understand the terms of the easement originally granted to the utility, it was necessary to interpret the provision in the easement that granted the utility the right to "cut and keep cut" the trees. Id. at 38, 468 A.2d 1055. The utility argued that this meant to cut down entirely; the plaintiffs maintained the language meant to trim and prune the trees. Id. at 38-39, 468 A.2d 1055.
The Court acknowledged that "[w]hen the legal rights of parties are clear, it is unjust and unfair to burden them with an administrative proceeding to vindicate their rights." Id. at 40, 468 A.2d 1055. However, where evidence is to be taken, and findings of fact to be made, this is best done by the administrative body statutorily charged with that function. Id. at 40-41, 468 A.2d 1055.
The Court remanded the case to the trial court for referral to the Board of Public Utility Commissioners, so that the Board might make the appropriate findings and recommendations "as to what is reasonably necessary for the proper maintenance of the utility system." Id. at 41-42, 468 A.2d 1055. These findings and recommendations were then to be submitted to the trial court. Id. at 42, 468 A.2d 1055.
The Court explained:
We stress that by retaining this role for the court, we are not giving the green light to those who seek to bypass the primary jurisdiction of the agency. Rather, we recognize the Board's expertise with these factual issues. Courts should be sensitive to purported legal claims that are really regulatory issues and should be referred to the agency. The legal dispute here was genuine. We hold only that where the resolution of a contested legal issue properly brought before a court necessarily turns on factual issues within the special province of an administrative agency, the court should refer the factual issues to that agency. The trial court should accept the factual determinations of the agency and lay them against the legal issues to be resolved and enter its final judgment resolving *981 the mixed questions of law and fact based upon the agency fact finding.

[Ibid.]
In IPCO Safety Corp. v. WorldCom, Inc., supra, the dispute centered on an agreement reached between IPCO and Worldcom for long distance phone service. IPCO was dissatisfied with the service and sued for damages for an alleged breach of contract. Worldcom claimed that its liability for consequential damages, among other things, was governed by F.C.C. regulations. Id. at 354-55. The court explained that a determination of primary jurisdiction implicates "pragmatic evaluation of the advantages and disadvantages of allowing the agency to resolve the issue in the first instance." Id. at 355.
Although primary jurisdiction may be invoked even when a question at issue is within the judiciary's ordinary experience, ibid., it has been defined as
a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress should not be passed over.... Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

[Ibid. (citation omitted).]
The factors to be considered in deciding whether to invoke the doctrine include 1) whether the matter at issue is within the conventional experience of judges; 2) whether the matter is peculiarly within the agency's discretion, or requires agency expertise; 3) whether inconsistent rulings might pose the danger of disrupting the statutory scheme; and 4) whether prior application has been made to the agency. Id. at 356.
The District Court found that there was a risk of inconsistent rulings should the court determine the validity of a limitation of liability clause in the rate schedule, or tariff, filed pursuant to law by Worldcom under the Federal Communications Act. Id. at 356-57. Referral to the FCC would, in contrast, "promote uniformity, efficiency and consistency in the interpretation of such tariffs," as well as the goals of primary jurisdiction. Thus certain issues were referred to the FCC for resolution, with further judicial proceedings stayed pending FCC determination. The court dismissed without prejudice defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted.
We find the decisions in Boss and IPCO to be relevant and persuasive here. The concept of "actual costs" is part of a regulatory scheme adopted by the Department of Health and is within its expertise to interpret and administer. We need not explore the complexities of hospital cost structures to decide their applicability here. We reject plaintiffs' arguments that "actual costs" can be determined simply by reference to the cost of copies at a local convenience store. The "actual costs" of reproduction of hospital records may well be unique, involving a cost of evaluating subpoenas and requests, determining confidentiality issues under applicable confidentiality laws, both federal and state, see e.g., N.J.S.A. 26:5C-7 (maintaining confidentiality of AIDS patient's records); Estate of Behringer v. Medical Ctr., 249 N.J.Super. 597, 634, 592 A.2d 1251 (Law Div.1991). We only raise these issues, without deciding their applicability, to suggest that such considerations may be relevant and can benefit from full exploration coupled with administrative expertise as to how they relate, if at all, to "actual costs."
We also recognize that the presence of CMI in the record retrieval scheme may simplify matters as it presumably has a contract with CMC which sets forth costs. Of course, the bona fides of such agreements, including CMI's profit margin, will have to be explored at the administrative level in considering the question of actual costs. This, too, is within the special expertise of the agency. *982 We find particularly compelling the need for uniformity of application of the term, "actual costs." The determination of the elements included in that standard impact on hundreds of hospitals and thousands of record requests. Plaintiffs' suggestion that the matter be resolved by a jury only underscores the need for uniform definition and application. A jury determination under a particular set of facts will provide little assistance in achieving uniformity or definition. On balance, the interests of justice require that the agency resolve this issue before plaintiffs proceed forward.
We reject CMI's argument, at this point, that the Department of Health has exclusive jurisdiction to adjudicate these issues. While the Department retains the jurisdictional authority to sanction those that violate the rule, plaintiffs here seek money damages, a remedy not available to plaintiffs at the agency level. If the Legislature intended to foreclose plaintiffs the from seeking the relief sought here, it would have explicitly limited the availability of that remedy or relief. See Campione v. Adamar of New Jersey, Inc., 155 N.J. 245, 714 A.2d 299 (1998); Lally v. Copygraphics, 173 N.J.Super. 162, 413 A.2d 960 (App.Div.1980), aff'd, 85 N.J. 668, 428 A.2d 1317 (1981). Plaintiffs do not attack the bona fides of the regulation, only CMC and CMI's compliance with the regulation, an issue which generates uncertainty as to defendants' primary burden that of proving "actual costs." We do not consider Delaware Valley Transplant Program v. Coye, 722 F.Supp. 1188 (D.N.J.1989), to be inconsistent with our conclusion that plaintiffs are not denied a remedy in the courts. In denying a private right to a plaintiff challenging a medical provider's requirement for a Certificate of Need, the district court concluded that plaintiff had no private cause of action as plaintiff was "not in the class for whose especial benefit the statute was enacted." Id. at 1201. In deciding this issue we must consider whether the Legislature intended to benefit plaintiffs and whether the legislative intent reflects such cause of action. See Jalowiecki v. Leuc, 182 N.J.Super. 22, 30, 440 A.2d 21 (App.Div.1981) (adopting the test of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L. Ed.2d 26 (1975) to determine legislative intent as to whether a private cause of action exists); and see Parks v. Pep Boys, 282 N.J.Super. 1, 659 A.2d 471 (App.Div.1995) (Recognizing a civil tort remedy for violation of N.J.S.A. 2A: 170-25.12), Trustees, Local 478 Trucking and Allied Industries Pension Fund v. Pirozzi, 198 N.J.Super. 297, 486 A.2d 1288 (Law Div. 1983) (denying a private cause of action for a violation of N.J.S.A. 2A:170-90.2).
Plaintiffs here are clearly in the class to be protected by the regulations in question. The reproduction charges will be paid by them. The regulation governs their one-onone relationship with the hospital or doctors. Once the Department has determined the meaning of "actual costs," plaintiffs may proceed, if appropriate, with any claim for overcharge. In the latter circumstance, we deem this case to be no different than a private action against, for example, an entity for alleged overcharging above administratively approved rates.[5]
Finally, we do not consider Exxon Corp. v. Township of East Brunswick, 192 N.J.Super. 329, 470 A.2d 5 (App.Div.1983), certif. denied, 96 N.J. 312, 475 A.2d 601 (1984), as dispositive on the issue of waiver of administrative remedies. Exxon involved much broader and compelling reasons for avoiding the administrative process, including the number of municipalities and counties involved in that assessment dispute. Here, the concern is narrowdeveloping a uniform definition and application of the term "actual costs," which will be applicable to all who seek medical records within the primary constraints of the regulation.

C.
We raise one additional matter. The pleadings in this case incorporated two disparate *983 matters involving different plaintiffs, defendants, regulations and standards. Only the issue of overcharging is common. The different causes of action should have been pled in separate actions. On remand, an order should be entered severing these actions.
We conclude that the matter should be reversed and remanded to the Law Division. As to the plaintiffs' claim against the Doctors, we find no basis for administrative relief. The order granting summary judgment is reversed and the matter remanded.
As to the plaintiffs' claims against CMC and CMI, we determine that while the Law Division has jurisdiction, the adjudication of the meaning of "actual costs" should be resolved by the Department of Health. The trial judge may enter an appropriate order to manage the litigation consistent with this opinion to the extent that the Law Division is able to adjudicate appropriate issues while the administrative proceedings are pending. Since the Law Division will be retaining jurisdiction over the underlying cause of action, the complaint should not be dismissed, but the trial judge should enter an appropriate order of transfer to the Department of Health.
The court below did not determine the issue of class certification under R. 4:32-1 (a). Since we are remanding this matter to the Law Division, that issue should be addressed and decided.
Reversed and remanded to the Law Division in accordance with this opinion.
NOTES
[1] Two notices of appeal were filedA-2708-97T2 appealing an order granting summary judgment and A-2709-97T2 appealing an order dismissing the complaintand are consolidated.
[2] The use of "actual cost" as a standard was rejected by the Board in enacting N.J.A.C. 13:35-6.5(c)4. Before adopting the regulation, the Board responded to a comment suggesting the "actual cost" standard for photocopying of doctors' records with the observation that such a standard would be "too difficult to handle administratively."
[3] Plaintiffs did not move for summary judgment.
[4] Davis is a minor and this action is actually being presented by his parent and natural guardian, Annie Van Deventer.
[5] On appeal, CMC appears to concede that the regulations do not preclude a private cause of action in the event of overcharging. In fact, defendant CMC's brief states, "by obtaining a favorable determination from DHSS regarding the `actual costs' language before continuing a Law Division suit, [plaintiffs] would presumably be able to use this agency determination in any subsequent litigation against any person or entity alleged to be in violation of the regulation."