NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1614-23

PAMELA J. GRAZIADEI,

     Plaintiff-Appellant,

v.

CAPITAL HEALTH SYSTEM,
INC.,

     Defendant,

and

RECOVERY & MONITORING
PROGRAM OF NEW JERSEY
d/b/a RAMP, THE NEW
JERSEY STATE NURSES'
ASSOCIATION, and INSTITUTE
FOR NURSING, INC.,

     Defendants-Respondents.

_____

**APPROVED FOR PUBLICATION**

**May 23, 2025**

**APPELLATE DIVISION**

Argued February 12, 2025 – Decided May 23, 2025

Before Judges Marczyk, Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2259-19.

Gregory B. Noble argued the cause for appellant (O'Connor, Parsons, Lane & Noble, LLC, attorneys; Gregory B. Noble and R. Daniel Bause, on the briefs).

Elizabeth F. Lorell argued the cause for respondents (Gordon Rees Scully Mansukhani, LLP, attorneys; Elizabeth F. Lorell and Michael J. Nesse, on the brief).

The opinion of the court was delivered by

PAGANELLI, J.A.D.

Plaintiff, Pamela J. Graziadei, appeals from three trial court orders that resulted in the dismissal of her complaint for lack of subject matter jurisdiction, in which she alleged defendants, Capital Health System, Inc. (Capital Health); Recovery and Monitoring Program of New Jersey d/b/a RAMP; the New Jersey State Nurses' Association (SNA); and the Institute for Nursing, Inc. (INI), discriminated and retaliated against her in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. Because we conclude the trial court had subject matter jurisdiction over plaintiff's LAD claims, we reverse and remand.

## I.

"[F]or purposes of our review, we accept as true" the allegations contained in plaintiff's Law Division complaint. Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 154-55 (App. Div. 2012) (citing Union Ink Co. v. AT&T Corp., 352 N.J. Super. 617, 627 (App. Div. 2002) ("For the limited

purposes of the underlying motion to dismiss . . . for lack of jurisdiction over the subject matter, . . . we must accept as true the allegations of the complaint.")).

Plaintiff alleged that in 2000 she began employment with Capital Health as a nurse manager. In 2006, she "was promoted to a director-level position" and in 2008, she "was promoted to . . . Nursing Divisional Director of Maternal Child Health." She alleged she was "a strong performer" and "received favorable performance evaluations."

On the morning of September 24, 2018, while at work, "plaintiff was asked to submit to a breathalyzer test . . . [and h]er blood alcohol level was over the legal limit as a result of her consuming alcohol the night before."

"[P]laintiff was referred to defendant RAMP's program.[1] RAMP purport[ed] to provide recovery and monitoring programs on behalf of" the INI

---

[1] On October 5, 2018, plaintiff and "[t]he New Jersey Board of Nursing [(Board)] and/or [RAMP]" executed a private letter agreement (PLA). In part, the PLA provided that plaintiff agreed:

> [T]hat any deviation from the terms of this [PLA] without the prior written consent of the Board shall constitute a failure to comply with the terms of this agreement. Upon receipt of any reliable information indicating that you have violated any term of this agreement, your nursing license may be automatically suspended by the Board. You may, upon notice, request a hearing to contest the entry of such an order.

A-1614-23

and the SNA. "As a result of RAMP and/or Capital Health's internal policies, plaintiff was on a leave of absence from approximately September 25, 2018 until March of 2019." During this period of time, "plaintiff was assured . . . that her job would be there for her when she returned."

In November 2018, plaintiff was advised "that she could not go back to her management position and that it would be two to three years before she could go back to that job." Thereafter, plaintiff was advised "that a management position would be 'too stressful' and that she needed to focus on recovery." Plaintiff was told "that she would not be able to return to a management position for five years."

Plaintiff "successfully underwent all of RAMP's requirements during her leave of absence, including three Alcoholics Anonymous meetings per week as well as an initial period of ninety meetings in ninety days."

Plaintiff "pleaded with RAMP to allow her to return to her management position, stressing that she had successfully completed all of RAMP's requirements[,] . . . had been in nurse management for over thirty years[,] . . .

_____

> At any such hearing the sole issue shall be whether any of the information received regarding your violation of the agreement was materially false.

did not have any primary patient responsibilities[,] . . . [and] was primarily an administrator."

In February 2019, RAMP advised Capital Health plaintiff "would not be returning to her management position."  Further, "[w]hen [plaintiff wa]s approved to return to work, RAMP staff w[ould] work with her to find an appropriate non-managerial position."  In April 2019, plaintiff wrote to RAMP and "implored [it] to allow her to be reinstated to her rightful management position."  In response, plaintiff was advised "that she would not be getting a managerial position for five years."

In April 2019, "plaintiff returned to work at Capital Health.  She was given the job of Quality and Safety Department, Performance Improvement Analyst."  Her salary was approximately half of what she earned in her prior position.

In November 2019, plaintiff filed her complaint.  She claimed she "suffer[ed] from alcoholism" and defendants violated the LAD by discriminating against her on that basis.

On June 28, 2023, the trial court granted plaintiff permission to file an amended complaint.  Plaintiff asserted between "March of 2020 until the present, there . . . [were] approximately six . . . instances where defendants . . . failed to cooperate with [her] in her requests for approval to obtain director

5

level and/or supervisory positions and/or to secure permission to work overtime." Further, plaintiff alleged "[t]he refusals to cooperate . . . [were] in direct retaliation for plaintiff's lawsuit . . . and w[ere] the by-product of continued discrimination and failure to accommodate."

In addition, plaintiff claimed RAMP, "with . . . knowledge of [her] . . . discrimination lawsuit," discharged her from the program because "she had been allegedly non-compliant" and the "decision to discharge plaintiff from RAMP put[ her] license and career in severe jeopardy."[2] She reiterated her LAD allegations and included a claim for retaliation.

On September 8, 2023, the trial court heard the parties' oral arguments regarding defendants', the SNA's, the INI's, and RAMP's, motion to dismiss plaintiff's complaint for a lack of subject matter jurisdiction.

At the conclusion of the argument, the court rendered an oral opinion. The court stated it could "interchange" the allegations from Beaver v. Magellan Health Services, Inc., 433 N.J. Super. 430 (App. Div. 2013), with the allegations in this case and "fit them in almost directly" and reach the same

---

[2] On March 23, 2023, the Board executed an "Order of Suspension of License" (OSL) that provided, in part: Plaintiff "may, under the terms of the [PLA], request a hearing, within fifteen days of receiving this order, on the sole issue of whether the information received regarding [plaintiff]'s violation of the [PLA] was materially false."

result.  The court cited <u>Beaver</u> for the proposition that "stripped to their barest essentials, plaintiff's claims amount to no more than a collateral challenge to an[] agency decision," and found "that[ wa]s exactly what we have here."

The trial court cited the following from plaintiff's brief:

> This is not a matter which is seeking to directly overturn or challenge any RAMP decision under the administrative . . . provisions cited by defendants. Rather, this is a statutory employment matter under the LAD which seeks to establish not that such actions were contrary to the code or any RAMP provisions, but rather that such actions were made with discriminatory and . . . retaliatory animus.

The trial court concluded that statement was the "definition of . . . an agency decision."  The court stated there was the "October 2018 PLA which [wa]s a Board [o]rder"; the November 2022 discharge order from the RAMP program; and "then the . . . March [20]23 [OSL]."  The court noted these "are all agency actions that had to follow the agency provisions."

In addition, the trial court found plaintiff "had to exhaust her . . . administrative remedies and file a [fifteen]-day appeal."  The court noted "the [fifteen]-day appeal would kick [plaintiff] right to a hearing, which is what" the order provided.  Further, the trial court stated "a hearing" would allow a record to be developed for Appellate Division review.

Moreover, the trial court credited defendants' argument:

7

> The . . . Board . . . has the requisite experience and understanding of complex regulatory framework governing these nursing/compliance issues; inconsistent rulings between the judiciary and the Board . . . as to the issues [p]laintiff challenges here could conceivably disrupt the statutory scheme concerning the Board['s] . . . authority. And there [wa]s no prior application for the agency involved here.

Therefore, "the only conclusion" the trial court could reach, "from reading the[] . . . papers, . . . especially the <u>Beaver</u> . . . case[]," was that "exclusive jurisdiction rest[ed] with the Board . . . [and plaintiff failed to] exhaust administrative remedies."

Thus, the trial court executed the September 2023 order that vacated the "June 28, 2023 [o]rder pursuant to <u>R[ule]</u> 4:50-1(f) and dismiss[ed] the [a]mended [c]omplaint for failure to state a claim under <u>R[ule]</u> 4:6-2(e) and lack of subject matter jurisdiction under <u>R[ule]</u> 4:6-2(a)."[3]

Plaintiff moved for reconsideration of the September 2023 order. In response, Capital Health cross-moved for dismissal "for lack of subject matter jurisdiction" and, if the court was "inclined to permit [p]laintiff's claims to proceed against" Capital Health, then to allow it to maintain its "cross-claims

---

[3] While the trial court's order stated it granted dismissal under <u>Rules</u> 4:6-2(a) and (e), and <u>Rule</u> 4:50-1(f), its opinion did not address <u>Rule</u> 4:6-2(e) or <u>Rule</u> 4:50-1(f) to support its analysis. Therefore, although plaintiff briefs the <u>Rule</u> 4:6-2(e) issues, we focus our review on <u>Rule</u> 4:6-2(a).

against" the other defendants. The trial court heard the parties' oral arguments on November 2, 2023.

On November 14, 2023, the trial court executed an order denying plaintiff's motion "for the reasons already articulated by the [c]ourt during the September 8, 2023 oral argument, [and] under the standards for reconsideration stated in <u>Lawson v. Dewar</u>, 468 N.J. Super. 128 (App. Div. 2021)."[4]

On February 13, 2024, the trial court executed a joint stipulation of dismissal with prejudice of plaintiff's claims against Capital Health and defendants' cross-claims.

## II.

On appeal, plaintiff contends the trial court erred because: (1) "RAMP and/or the Board . . . in no way hold any jurisdiction, let alone exclusive jurisdiction, over any dispute wherein plaintiff maintains that certain adverse actions taken against her were retaliatory, discriminatory or violative of the LAD"; (2) "in the October 2018 [PLA regarding] . . . plaintiff's RAMP commitment, the only challenge or appeal . . . was the ability to 'solely' challenge 'whether any of the information received regarding [plaintiff's] violation of the agreement was materially false'" and "when plaintiff was

---

[4] While the motion was pending, plaintiff settled her case with Capital Health.

 A-1614-23

ejected from RAMP . . . and thereafter had her license suspended, the only available challenge . . . was to request a hearing with the 'sole issue' . . . being 'whether the information received regarding [plaintiff]'s violation of the [PLA] was materially false'"; (3) "[i]n no way is plaintiff seeking to undo or revise any administrative decision or process"; and (4) her claims that defendants discriminated and retaliated against her "in no way . . . directly challenge or seek to overturn any decision of the . . . Board . . ., or RAMP . . . rather, plaintiff merely seeks monetary damages that stem from . . . violations of the LAD."

Defendants assert the trial court properly granted dismissal. They assert: (1) the Law Division lacked subject matter jurisdiction because "the Board . . . ha[d] primary jurisdiction over this matter," and the SNA and the INI "could never provide and still are not able to provide [the relief plaintiff seeks] as the Board . . . controls . . . [p]laintiff's ability to work under certain strict standards—or not work—in the State of New Jersey"; (2) plaintiff failed to exhaust her administrative remedies by not bringing "her claims directly before the Board . . . at the outset," and "[h]er failing to do so preclude[d] her from obtaining any relief or money damages against [d]efendants in connection with her [a]mended [c]omplaint"; (3) "[p]laintiff was required to pursue relief in this matter in a manner consistent with the appeal of an administrative

decision, in which case t[he Law Division] lack[ed] jurisdiction, as [p]laintiff would have been required to appeal directly to the Appellate Division"; and (4) "our [c]ourts have consistently issued opinions admonishing and rejecting attempts by plaintiffs to collaterally attack final agency decisions by asserting common law and other causes of action," citing <u>Beaver</u>.

A.

We begin our analysis with the LAD.  In enacting the LAD:

> The Legislature finds and declares that practices of discrimination against any of its inhabitants, because of . . . disability . . . are matters of concern to the government of the State, and that such discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundation of a free democratic State; . . . .
>
> The Legislature further declares its opposition to such practices of discrimination when directed against any person by reason of . . . disability . . . in order that the economic prosperity and general welfare of the inhabitants of the State may be protected and ensured.
>
> The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm.  The personal hardships include:  economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social

11

disruption; and adjustment problems, which particularly impact on those protected by this act. Such harms have, under the common law, given rise to legal remedies, including compensatory and punitive damages. The Legislature intends that such damages be available to all persons protected by this act and that this act shall be liberally construed in combination with other protections available under the laws of this State.

[N.J.S.A. 10:5-3.]

"[T]he LAD is remedial legislation intended to 'eradicate the cancer of discrimination' in our society. As such, it compels liberal construction in order to advance its beneficial purposes. Indeed, our courts have found that 'the more broadly [the LAD] is applied the greater its anti[-]discriminatory impact.'" Nini v. Mercer Cnty. Cmty. Coll., 202 N.J. 98, 115 (2010) (second alteration in original) (citations omitted) (quoting L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ., 189 N.J. 381, 400 (2007)) (internal quotation marks omitted).

In Clowes v. Terminix International, Inc., the New Jersey Supreme Court "conclude[d] that alcoholism is a handicap under the" LAD. 109 N.J. 575, 578 (1988); see also Delvecchio v. Twp. of Bridgewater, 224 N.J. 559 (2016).

Under N.J.S.A. 10:5-12(a):

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

12

> For an employer, because of the . . . disability . . . of any individual, . . . to refuse to hire or employ or to bar or to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .
>
> . . . .
>
> Nothing in this subsection shall prohibit the application of the doctrine of "continuing violation" or the "discovery rule" to any appropriate claim as those doctrines currently exist in New Jersey common law. It shall be an unlawful employment practice to require employees or prospective employees to consent to a shortened statute of limitations or to waive any of the protections provided by the [LAD] . . . .

Moreover, the LAD forbids retaliation. Under N.J.S.A. 10:5-12(d) it is unlawful:

> For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has sought legal advice regarding rights under this act, shared relevant information with legal counsel, shared information with a governmental entity, or filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or

13

> encouraged any other person in the
> exercise or enjoyment of, any right
> granted or protected by this act.

Under N.J.S.A. 10:5-13(1), "[a]ny person claiming to be aggrieved . . . may . . . make, sign, and file with the division [(DCR)[5]] a verified complaint in writing." "Upon receipt of the complaint, the [DCR] shall notify the complainant . . . [of] the right to file a complaint in the Superior Court to be heard before a jury." Ibid. "Any complaint filed in the [DCR] . . . pursuant to th[e LAD] must be so filed within 180 days after the alleged act of discrimination." N.J.S.A. 10:5-18.

Alternatively, and as happened here, "[a]ny person claiming to be aggrieved . . . may initiate suit in Superior Court . . . without first filing a complaint with the" DCR. N.J.S.A. 10:5-13(a)(2). In a Law Division suit, a plaintiff is entitled to: (a) a jury trial, (b) "[a]ll remedies available in common law tort actions[,] . . . injunctive relief," and remedies provided in "any other statute," and (d) treble damages, under N.J.S.A. 10:5-13(a)(2); and "back pay" under N.J.S.A. 10:5-12(a). Ibid. A plaintiff must file their complaint in the Law Division within two years. See Henry v. N.J. Dept. of Human Servs., 204

---

[5] N.J.S.A. 10:5-5.1 provides "[t]he Division against Discrimination shall be known as the 'Division on Civil Rights'" (DCR).

N.J. 320, 324 (2010) (citing N.J.S.A. 2A:14-2[6]; <u>Montells v. Haynes</u>, 133 N.J. 282, 285 (1993)).

Further, an aggrieved party is not required to raise claims of discrimination or retaliation in any other proceeding. In <u>Ensslin v. Township of North Bergen</u>, we stated the aggrieved party "was under no compulsion to contest his [alleged discriminatory] termination under the procedures afforded." 275 N.J. Super. 352, 372 (App. Div. 1994). Instead, that party "had the right to initiate suit in Superior Court." <u>Ibid.</u> (citing N.J.S.A. 10:5-13); <u>see also</u> <u>Wolff v. Salem Cnty. Corr. Facility</u>, 439 N.J. Super. 282, 301 (App. Div. 2015) (Sabatino, P.J., concurring) ("an employee who believes that he or she has been the victim of retaliation is [not] obligated to raise those retaliation claims as a defense in . . . disciplinary cases."). Further,

> it would be inequitable and contrary to the strong anti-discriminatory public polic[y] of the LAD . . ., to impose such an obligation upon an employee. To deprive an employee of that choice and mandate that he or she assert and litigate his or her retaliation claims in a disciplinary proceeding brought by the employer would severely curtail the employee's rights under the LAD . . . to the important benefits of a Superior Court forum. Those benefits include more expansive discovery, a trial by jury, and the full

---

[6] N.J.S.A. 2A:14-2(a) provides that "every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued."

A-1614-23

panoply of remedies available in civil actions brought under those statutes.

[Wolff, 439 N.J. Super. at 302 (Sabatino, P.J., concurring).]

Against this backdrop, we are convinced that plaintiff was wrongfully denied her right to pursue her LAD claims in the Law Division. Plaintiff was not, as defendants suggest, required to raise her discrimination or retaliation issues at a "hearing." See Ensslin, 275 N.J. Super. at 372; Wolff, 439 N.J. Super. at 301 (Sabatino, P.J., concurring). Nor was she then required to pursue an appeal directly to the Appellate Division or exhaust administrative remedies in pursuit of LAD relief. Instead, she had the right to file a complaint in the Law Division, which she did.

Moreover, implicit in defendants' argument, is that plaintiff somehow lost or waived her LAD claims by participating in RAMP or because she failed to raise her LAD claims within fifteen days as provided in the PLA and referenced in the OSL. However, there can be no waiver of "any of the protections provided by the" LAD or "consent to a shortened [fifteen-day] statute of limitations period." N.J.S.A. 10:5-12(a).

Further, under the PLA, and again referenced in the OSL, plaintiff was limited to "request[ing] a hearing . . . on the sole issue of whether the information received regarding [plaintiff]'s violation of the [PLA] was

16

materially false."  It is unclear how the "hearing" on that "sole issue" could or would have addressed plaintiff's LAD claims, or replicated her rights as accorded in a Law Division proceeding and the array of LAD remedies.

Under these circumstances, plaintiff was wrongfully denied her right to bring her LAD claims in the Law Division.  We note the limited scope of our opinion.  We merely conclude the Law Division had subject matter jurisdiction over plaintiff's LAD complaint.  We offer no opinion as to the ultimate merits of her LAD claims or defendants' defenses.

B.

Defendants assert the Law Division lacked subject matter jurisdiction over plaintiff's LAD claims and plaintiff is prohibited from "collaterally attack[ing a] final agency decision[]."

Rule 4:6-2(a) allows a party to assert the defense of "lack of jurisdiction over the subject matter," in either their answer or by motion.  "Whether subject matter jurisdiction exists presents a purely legal issue . . . which we review de novo."  Beaver, 433 N.J. Super. at 437-38 (quoting Santiago, 429 N.J. Super. at 156).

Deference to an agency's primary jurisdiction "is appropriate only if 'to deny the agency's power to resolve the issues in question' would be inconsistent with the 'statutory scheme' which vested the agency 'with the

authority to regulate [the] industry or activity' it oversees." Muise v. GPU, Inc., 332 N.J. Super. 140, 160 (App. Div. 2000) (alteration in original) (citation omitted).

> The factors to be considered in deciding whether to invoke the doctrine include 1) whether the matter at issue is within the conventional experience of judges; 2) whether the matter is peculiarly within the agency's discretion, or requires agency expertise; 3) whether inconsistent rulings might pose the danger of disrupting the statutory scheme; and 4) whether prior application has been made to the agency.
>
> [Ibid. (citation omitted) (quoting Boldt v. Correspondence Mgmt., Inc., 320 N.J. Super. 74, 85 (App. Div. 1999)).]

Applying the jurisdictional factors, we are convinced the Law Division had subject matter jurisdiction. First, as provided by statute, plaintiff has the right to file her complaint in the Law Division. See N.J.S.A. 10:5-13(a)(1). Second, there is nothing about plaintiff's LAD discrimination or retaliation claims that are "peculiarly within the agency's discretion, or requires agency expertise." Ibid. (quoting Boldt, 320 N.J. Super. at 85). Third, defendants argue "[n]otably, inconsistent rulings between the judiciary and the Board . . . as to the issues [p]laintiff challenges here would disrupt the statutory scheme concerning the Board['s] . . . authority." However, plaintiff is not seeking anything other than a determination regarding whether defendants discriminated or retaliated against her in violation of the LAD. Defendants

18

never considered these issues, therefore, there could be no inconsistency. Fourth, plaintiff has not raised her LAD claims with defendants. Thus, applying the Muise factors, subject matter jurisdiction was properly vested in the Law Division.

In addition, we conclude that reliance on Beaver is misplaced. In Beaver, we considered "[u]nder what circumstances may a litigant pursue common law and statutory causes of action in the Law Division, rather than appeal from [a] State final agency determination, where the merits of the agency determination are at issue?" Beaver, 433 N.J. Super. at 432.

Beaver did not concern subject matter jurisdiction over an LAD complaint. Instead, in Beaver, the State Health Benefits Commission (SHBC) "adopted the [Administrative Law Judge's] findings and conclusions" that Beaver did not meet "his burden of proof." Id. at 436. Beaver "filed a notice of appeal [with the Appellate Division] from the SHBC's final decision." Ibid. Beaver "later voluntarily withdrew his appeal and the appeal was dismissed." Ibid.

Thereafter, Beaver "filed a complaint in the Law Division," alleging: "(1) breach of contract; (2) breach of fiduciary duty; (3) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -184; and (4) unjust enrichment." Ibid.

19

We noted "we ha[d] consistently recognized the statutory and regulatory scheme that require[d] disputes . . . to be submitted first to the SHBC, and, only thereafter, to this court for resolution."  Id. at 439.  Moreover, we stated Beaver's complaint was a "thinly disguised effort to . . . divest this court of our[] jurisdiction."  Id. at 442.  Therefore, we affirmed the trial court's dismissal of Beaver's complaint for lack of subject matter jurisdiction, because "[t]o hold otherwise would permit [Beaver] to collaterally attack a State administrative determination in the Law Division.  [But t]he Law Division [wa]s without jurisdiction to adjudicate such claims.  R[ule] 2:2-3(a)."[7]  Id. at 444.

Plaintiff's situation is wholly distinguishable from Beaver's.  Here, plaintiff did not attempt "to divest this court of our jurisdiction."  Id. at 442.  Indeed, she was not required to and did not, pursue her LAD discrimination and retaliation claims at a "hearing."  Therefore, there was no "state administrative agency" "final decision" on her LAD claims that would have provided us with jurisdiction.  See R. 2:2-3(a)(2).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hasley

Clerk of the Appellate Division

---

[7] Under Rule 2:2-3(a)(2), "appeals may be taken to the Appellate Division as of right" "to review final decisions . . . of any state administrative agency."