853 A.2d 328 (2004)
371 N.J.Super. 398
ALLIANCE FOR DISABLED IN ACTION, INC. (ADA), a New Jersey Not-for-Profit Corporation, Plaintiff-Appellant/Cross-respondent,
v.
CONTINENTAL PROPERTIES; Edison Tyler Villages, L.L.C., Defendant-Respondents/Cross-Appellants,
Construction Official of the Township of Edison; Sullivan Associates, Inc., Architects and Planners; Schoor DePalma, Inc.; and Wellisch Home Designs, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2004.
Decided July 27, 2004.
*329 David J. Popiel, South Orange, argued the cause for appellant/cross-respondent (Community Health Law Project, attorney; Mr. Popiel and Stuart H. Weiner, on the brief).
David M. Hutt, Woodbridge, argued the cause for respondents/cross-appellants (Hutt & Shimanowitz, attorneys; Mr. Hutt, of counsel and on the brief; Jonathan G. Burnham, on the brief).
*330 David A. Clark, Teaneck, argued the cause for respondent Construction Official of the Township of Edison (DeCotiis, Fitzpatrick, Cole & Wisler, attorneys; Mr. Clark, on the brief).
Fred Pugliese, New Brunswick, argued the cause for respondent Schoor DePalma, Inc. (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Lawrence P. Powers, of counsel; Mr. Pugliese, on the brief).
Respondents Sullivan Associates, Inc. and Wellisch Home Designs, Inc. did not participate in this appeal.
Before Judges WEFING, COLLESTER and FUENTES.
The opinion of the court was delivered by
WEFING, J.A.D.
The parties appeal and cross-appeal from various orders entered by the trial court during the proceedings below. After reviewing the record in light of the contentions advanced on appeal, we affirm in part and reverse in part and remand for further proceedings.
This appeal is a companion to Alliance for Disabled in Action, Inc. v. Renaissance Enterprises, Inc. et al, 371 N.J.Super. 401, 853 A.2d 334 (App.Div.2004). To the extent that the issues overlap, we shall rely upon our opinion in that matter, 371 N.J.Super. 401, 853 A.2d 334 (App.Div.2004).
In its complaint, plaintiff Alliance for Disabled in Action, Inc. ("ADA") refers to itself as a nonprofit membership organization which "seeks to advance the rights and well-being of persons with disabilities generally, including those who require that buildings be accessible to persons with physical disabilities." Defendants Continental Properties and Edison Tyler Villages, LLC ("Continental") are the developer of a large residential housing complex located in Edison and known as Talmadge Village. Defendant Sullivan Associates, Inc. ("Sullivan") served as architect for this project and defendant Schoor DePalma ("Schoor") as site engineers. Defendant Construction Official of Edison issued the requisite permits and approvals for construction of this complex. As in the Renaissance matter, plaintiff alleges that the design and construction of this complex did not comply with New Jersey's Barrier Free Subcode, N.J.A.C. 5:23-7.1 to -7.31 ("subcode"), and that the actions of defendants with regard to this complex were acts of discrimination under the Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("LAD"). N.J.S.A. 10:5-12.4 declares that a "failure to design and construct any multi-family dwelling of four or more units in accordance with barrier free standards ... [is] unlawful discrimination."
On appeal, plaintiff urges that the trial court erred in dismissing certain of its claims for reasons of the statute of limitations, in dismissing its claims against the Construction Official and in dismissing its claims against the architect and engineer for failure to present a sufficient expert report. In its cross-appeal, Continental contends the trial court erred in not referring the matter to the Department of Community Affairs pursuant to the doctrine of primary jurisdiction or in not requiring plaintiff to exhaust its administrative remedies before resorting to litigation.

I
Talmadge Village consists of twenty-seven buildings which contain a total of 330 housing units. Of these 330 units, 110 are ground-floor ranch units. The complex also includes a swimming pool and pool building. Unlike Renaissance Village, which consists of condominium units, Talmadge Village was designed and constructed as a rental complex.
*331 Continental submitted its plans for this development in August 1995 and received its first building permit in December 1995. Construction began in February 1996 and the first certificate of occupancy was issued on September 25, 1996. Construction permits for the remaining apartment buildings were issued at various dates through August 1996. Certificates of occupancy for the apartment buildings were issued through May 1, 1998. Construction permits for the swimming pool and pool building were issued on January 16, 1997 and April 25, 1997, respectively. They received certificates in early July 1998. Construction at the complex ended in the spring of 1998, slightly more than two years after it had commenced.
In this matter, unlike the Renaissance matter, a bench trial was held to determine whether certain features of the complex violated the subcode. As a result of that trial, the court ordered the reconstruction and retrofitting of entrance thresholds, kitchen work-space areas and plumbing insulation, bathtub shower faucet controls, cabana entrances and restroom mirrors and curb ramps. The trial court rejected plaintiff's complaint that other features violated the subcode. Neither side has appealed the final judgment which sets forth those determinations and awards plaintiff a counsel fee of $11,413.08. The trial court's judgment was stayed pending appeal.

II
Plaintiff filed its initial complaint on April 7, 1999. In this matter, unlike the Renaissance matter, the trial court selected the date upon which the certificate of occupancy was issued as the triggering date for limitations purposes. As we explained in our opinion in that matter (op. at 417, 853 A.2d at 339), we consider that the correct date to utilize. And, unlike the Renaissance matter, there is no dispute in this case that a two-year limitations period applies, there being no operative facts which occurred prior to July 27, 1993, the date the Court issued its opinion in Montells v. Haynes, 133 N.J. 282, 627 A.2d 654 (1993).
The trial court did, however, as in the Renaissance matter, refuse to apply the continuing violation doctrine. It thus dismissed plaintiff's claims in connection with all the buildings which had received certificates of occupancy before April 7, 1997. The result of this determination was that the trial court considered plaintiff's complaint timely as to fourteen buildings within the complex and untimely as to the remainder.
We set forth in our opinion in Renaissance our analysis of the continuing violation doctrine and why, in our view, there is no inherent bar to its application in a case alleging discrimination in terms of handicapped accessibility. (Op. at 422-23, 853 A.2d at 342-43). That analysis bears equally on this matter. Further, the same factors that impelled our determination to invoke the continuing violation doctrine in the Renaissance matter are present here, and we reach the same conclusion.
Talmadge Village was constructed pursuant to prototype plans. Construction activity occurred essentially uninterrupted from the time it commenced in 1996 through completion in 1998. The very uniformity of the design, which simplified the construction process, also simplifies the process of retrofitting and repair. We are satisfied the trial court erred in refusing to apply the continuing violation doctrine for the reasons we expressed in the Renaissance opinion (op. at 422-23, 853 A.2d at 342-43), and we reverse the trial court's order which dismissed certain of plaintiff's claims against Continental as untimely.
*332 As in the Renaissance matter, plaintiff urges the discovery rule as another basis upon which the trial court's order should be reversed. Again, we do not find it necessary to address that contention in light of the fact that we are satisfied that plaintiff's complaint should be deemed timely for the entire Talmadge complex. We repeat, however, our rejection of the trial court's view that plaintiff had an obligation to inspect the premises and learn of its failure to comply with the subcode.

III
The Construction Official of the Township of Edison issued the necessary approvals and certificates which allowed the development to proceed and be completed. Plaintiff contended that by doing so, the Construction Official had also committed an act of discrimination in violation of LAD. As in Renaissance, plaintiff had no proof of discriminatory intent or purpose on the part of the official and the trial court dismissed all claims against him. For the reasons we expressed in Renaissance, we affirm that determination.

IV
During the course of the pretrial proceedings in this matter, plaintiff retained the services of an expert in the area of handicapped-accessibility requirements, Edward Hoff. Hoff is neither a licensed architect nor a licensed engineer but he is employed by New Jersey Transit Authority as a "Senior Accessibility Specialist," dealing with handicapped-accessibility matters in terms of mass transit. He holds a certificate from the Department of Community Affairs evidencing successful completion of a course in the requirements of the subcode.
Hoff served three reports in this matter, a site inspection report dated May 25, 2000, a review of architectural plans report dated July 28, 2000, and a certification dated March 27, 2001. In his first two reports, Hoff assessed the level of compliance (or, from plaintiff's perspective, noncompliance) with the subcode with regard to certain aspects of Talmadge Village. In the first report, Hoff made no comment upon the role of Sullivan, the architect. In his second report, Hoff noted several deficiencies in the architectural design in terms of the subcode.
The trial court granted Sullivan's motion for summary judgment, concluding that plaintiff's claim against the firm was essentially one for architectural malpractice and thus could not proceed in the absence of an opinion by a licensed architect. Taylor v. DeLosso, 319 N.J.Super. 174, 179, 725 A.2d 51 (App.Div.1999) ("In a professional negligence case, the standard of care must normally be established by expert testimony").
Not all experts, however, must possess a professional license. Landrigan v. Celotex Corp., 127 N.J. 404, 421-22, 605 A.2d 1079 (1992) (holding that an epidemiologist who was not a medical doctor could testify that decedent's colon cancer was causally related to his exposure to asbestos); State v. One Marlin Rifle, 319 N.J.Super. 359, 368, 725 A.2d 144 (App.Div.1999) ("It is widely recognized that an expert witness on a medical subject does not have to be a person duly licensed to practice in that particular field of medicine").
Having reviewed this record, we are satisfied the trial court erred in characterizing this matter as a claim of architectural malpractice. Plaintiff did not contend that Sullivan deviated from the standard of care governing architects charged with the responsibility for designing such a project. Rather, its claim was restricted to its allegation that the design of the project did *333 not comply with the subcode. Hoff had extensive experience with the subcode and was well-qualified to testify whether Talmadge Village was in compliance with the subcode. Indeed, the trial court accepted Hoff as an expert on that very topic at trial and Hoff testified extensively about the deficiencies in that regard he observed at the complex.
We recognize that a trial court is vested with wide discretion in determining the competency of a proposed expert witness. "Absent a clear abuse of that discretion, an appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64, 622 A.2d 1279 (1993). In this instance, however, the trial court did abuse its discretion by dismissing plaintiff's claims against Sullivan for failure to present competent expert opinion and we reverse the trial court's order granting that relief.
We turn now to plaintiff's claims against Schoor, which was site engineer for this project. At oral argument before us, plaintiff specified that its claim against Schoor was restricted to the curb cuts throughout this project, which it alleged, did not comply with the correct standards to accommodate those with disabilities. The trial court granted Schoor's motion for summary judgment on the same basis that it had granted summary judgment to Sullivan  that Hoff was not a licensed engineer.
Although, for the reasons we just set forth, we disagree with the rationale employed by the trial court, we agree with the result that it reached. We do so because it is clear from Hoff's deposition that he lacked any knowledge of the nature or extent of Schoor's involvement in this project. At his deposition, Hoff admitted he had never reviewed the project plans Schoor prepared, could not say whether those plans complied with the subcode, could not say whether there were any differences between plans prepared by Schoor and the as-built conditions and did not know whether Schoor had any responsibilities during the construction phase of the project. Plaintiff thus failed to present any competent evidence indicating Schoor was in any way responsible for the manner in which the curb cuts were constructed. Schoor was entitled to summary judgment and we affirm that order of the trial court.

V
We turn now to Continental's cross-appeal. The bench trial in this matter got under way on April 15, 2002. In his opening statement, counsel for Continental contended that jurisdiction over this matter lay with the Department of Community Affairs because it was charged with the responsibility of enforcing the subcode regulations. The following day, at the end of plaintiff's case, Continental renewed its contention. It asserted a two-pronged argument: that it was up to the Department, not the court, to determine if there had been subcode violations, and that plaintiff had failed to exhaust its administrative remedies. The parties argued these contentions at the end of the trial and the trial court denied Continental's application. Continental has cross-appealed, contending the trial court erred in doing so.
Continental's contention rested upon the inter-related but distinct concepts of primary jurisdiction and exhaustion of administrative remedies.
The doctrinally-related principles of exhaustion of administrative remedies and primary jurisdiction both serve the larger policy of implementing this organic theory of governmental structure:

*334 The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.
[Boss v. Rockland Elec. Co., 95 N.J. 33, 40, 468 A.2d 1055 (1983)(quoting United States v. W. Pac. R.R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956)).]
Neither the doctrine of primary jurisdiction nor the requirement of exhaustion of administrative remedies is absolute. A trial court's determination whether to invoke those principles is a discretionary one. Boldt v. Correspondence Mgmt., Inc., 320 N.J.Super. 74, 82-85, 726 A.2d 975 (App.Div.1999). Continental makes no assertion that the findings of the trial court as to the presence of subcode violations were incorrect. We see no abuse of the trial court's discretion in denying Continental's motion and its order in that regard is affirmed.

VI
In sum, on plaintiff's appeal, we affirm in part and reverse in part and remand for further proceedings. On defendant's cross-appeal, we affirm.
FUENTES, J.A.D., concurring in part, dissenting in part.
I concur with the majority as to Points I, II, IV, V and VI. I disagree as to Point III and therefore dissent on the question of the liability of the construction official, for the reasons expressed in my dissent in the companion case of Alliance for Disabled in Action, Inc. v. Renaissance Enterprises, Inc. et al, A-1091-02.