**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

| | | |
|---|---|---|
| ------------------------------------------------------x | | TAX COURT OF NEW JERSEY |
| CIBA SPECIALTY CHEMICALS CORP., | : | DOCKET NO. 005635-2004 |
| | : | DOCKET NO. 001986-2005 |
| Plaintiff, | : | DOCKET NO. 001501-2006 |
| | : | |
| v. | : | Civil Action |
| | : | |
| TOWNSHIP OF DOVER, | : | |
| | : | |
| Defendant. | : | |
| ------------------------------------------------------x | | |
| CIBA SPECIALTY CHEMICALS CORP., | : | DOCKET NO. 003458-2007 |
| | : | DOCKET NO. 005340-2008 |
| Plaintiff, | : | DOCKET NO. 005210-2009 |
| | : | DOCKET NO. 004487-2010 |
| v. | : | |
| | : | Civil Action |
| TOWNSHIP OF TOMS RIVER, | : | |
| | : | |
| Defendant. | : | |
| ------------------------------------------------------x | | |
| BASF CORP., | : | DOCKET NO. 002155-2011 |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| TOWNSHIP OF TOMS RIVER, | : | |
| | : | |
| Defendant. | : | |
| ------------------------------------------------------x | | |

Decided: August 3, 2017

Philip J. Giannuario, Esq., and Adam Jones, Esq., for plaintiff
(Garippa, Lotz & Giannuario, P.C., attorneys)

John F. Casey, Esq. for defendant (Chiesa, Shahinian &
Giantomasi, P.C., attorneys)

DeALMEIDA, P.J.T.C.

This constitutes the court's opinion with respect to plaintiff's motion for partial summary judgment on the discrete issue to be addressed in the first phase of the bifurcated trial in these matters: whether on the relevant valuation dates there existed a reasonable probability of a change in zoning for the subject property from industrial/commercial to mixed-use, including residential. The answer to this question will be a crucial element of the highest and best use analysis used to determine the true market value of the subject property for local property tax purposes. The municipality argues that a zoning change was reasonably probable on the relevant dates and that the true market value of the subject property should reflect its potential to be developed with a project that includes residential units. The owner of the subject property argues that a change in zoning was not reasonably probable on the valuation dates and that the parcel should be valued for its potential development only for permitted commercial and industrial uses. As the party asserting a reasonable probability of a zoning change, the municipality has the burden of proof on this issue.

Plaintiff argues that because the municipality has not named a licensed real property appraisal expert to offer an opinion on the reasonable probability of a zoning change at the subject property, it is impossible, as a matter of law, for the municipality to meet its burden of proof. According to plaintiff, summary judgment should be entered in its favor on the question of the zoning change and the court should proceed to trial to determine the true market value of the subject property with a highest and best use that comports with the zoning regulations in place on the relevant valuation dates. The municipality argues that it may rely on the testimony of a land development planning expert who issued a report and addendum proffering an opinion on how a mixed-use development, including residential units, might be situated on the subject property. The proposed expert's report and addendum include an opinion that a change in zoning at the property

2

to permit such development was likely to occur. Plaintiff also argues that the opinion proffered by the municipality's proposed expert witness is an inadmissible net opinion, providing a separate basis for granting summary judgment in favor of plaintiff on the zoning-change question.

For the reasons explained more fully below, the court denies plaintiff's motion. The court concludes that the motion record does not support a determination that, as a matter of law, the municipality cannot meet its burden of proof with respect to the reasonable probability of a zoning change on the relevant valuation dates. There are no legal precedents in this State holding that only a licensed real estate appraiser can offer an opinion with respect to the reasonably probability of a zoning change. To the contrary, it is well established that the determination of who may provide expert testimony rests with the trial court, which is charged with evaluating the proposed expert's training, knowledge, and experience. It is certainly reasonable to argue that a licensed real estate appraiser is the best professional to offer an opinion on the reasonable probability of a zoning change for purposes of determining the value of real property. However, a witness with training, knowledge, and experience in land development planning may also possess sufficient expertise to offer an opinion on that topic. The most appropriate way for the court to decide whether the municipality's proposed expert is competent to offer opinion testimony on the likelihood of a zoning change at the subject property is for the court to evaluate the evidence adduced at trial regarding the training, knowledge and experience of the witness.

In addition, the court cannot conclude based on the motion record that the opinion proffered in the report and addendum issued by the municipality's proposed expert is so bereft of factual support as to constitute an inadmissible net opinion. As detailed below, the report and addendum describe the characteristics and history of the subject property in detail, discuss the contamination and remediation experienced at the parcel, explain the numerous statutory, environmental, and

3

regulatory restrictions that likely will affect development of the property, and point to the redevelopment of a purportedly similar parcel in Ocean County as an example of how a zoning change might be effectuated at the subject. Whether the court will find this information to be a sufficient, credible basis for the proposed expert's opinion that a zoning change was likely at the subject property on the relevant valuation dates is an issue to be decided at trial. The court makes no finding in this regard today. The court cannot, however, conclude based on the motion record that the opinion stated in the proposed expert's report and addendum is an inadmissible net opinion.

The court, therefore, will proceed with the first phase of the bifurcated trial. The parties will be free to present the testimony of their expert witnesses and to cross-examine the experts offered by their opponent. This will give the court the opportunity to evaluate the testimony and credibility of the experts and to determine the weight be given to their opinions. Either party may seek relief by way of motion at trial or after the evidentiary record has been developed further.

## I. Findings of Fact

The court makes the following findings of fact based on the certifications and exhibits submitted by the parties with respect to plaintiff's motion.

These appeals concern the local property tax assessments on real property in Toms River Township. The subject property is designated in the tax records of the township as Block 411, Lot 6 and is commonly known as 1298 Route 37 West.

The property consists of approximately 1,200 acres on which was once situated plaintiff Ciba Specialty Chemical Corp.'s ("Ciba") industrial operations. From 1952 to 1990, Ciba manufactured dyes, pigments, resins and epoxy additives at the property. By December 1996, all commercial operations at the property ceased. Most of the manufacturing buildings were subsequently demolished. Ciba's commercial activities resulted in contamination of the property.

4

Sludge and process wastes were disposed of in several locations on the site, including a stacked-drum disposal area originally believed to contain approximately 35,000 drums of toxic waste and a 12-acre filtercake disposal area containing toxic waste. The commercial operations also resulted in the contamination of backfilled lagoons near the Toms River and two basins on the property. Contamination from these areas and several other areas on site leached into the groundwater.

In September 1983, the entire parcel, along with another 150 acres, was designated by the federal government as a Super Fund site and placed on the Environmental Protection Agency's National Priorities List. The designated boundaries of the Super Fund site essentially are delineated by the metes and bounds of the subject property. From 2004 to 2011, contamination at the subject property was remediated for a total cost of $110,365,000. Remediation efforts continued after 2011.

The property owner challenged the assessments on the property for tax years 2004 through 2011 through the filing of Complaints in this court. The municipality filed Counterclaims in tax years 2004 and 2009 and filed Complaints challenging the assessments for tax years 2005 and 2008. All of the Complaints and Counterclaims, where applicable, for tax years 2004 through 2010 list a single parcel, Block 411, Lot 6. This parcel, therefore, is the only property before the court for tax years 2004 through 2010. [1]

---

[1] While these appeals were pending the names of both parties changed. In 2004, Ciba owned the subject property. In April 2009, BASF Corp. acquired Ciba's assets and business and accepted responsibility for environmental remediation at the subject property. The taxpayer, however, continued to be identified as Ciba in the tax year 2010 Complaint. BASF Corp. is named as plaintiff in the tax year 2011 Complaint. On November 7, 2006, voters approved a referendum changing the municipality's name from Dover Township to Toms River Township. The court refers to the property owners collectively as "plaintiff" and the municipality as "municipality."

Plaintiff's Complaint for tax year 2011 challenges the assessment on Block 411, Lot 6, as well as the assessments on three other parcels: Block 411.32, Lot 8, Block 411.34, Lot 12, and Block 409, Lot 62. The relationship of the three additional parcels to Block 411, Lot 6 is not clear. The court concludes that it need not address the status of the three additional parcels in the 2011 Complaint in order to resolve the present motion.[2]

The pretrial management of these matters revealed the complexity of the central issue to be decided by the court: the true market value of the subject property on the relevant valuation dates. Both parties acknowledge that a portion of the property was severely contaminated and that despite remediation efforts, that portion of the site likely is unsuitable for development. The parties also recognize that contamination and remediation costs must be taken into account when determining the true market value of the subject property on the relevant valuation dates. See Inmar Assocs., Inc. v. Borough of Carlstadt, 112 N.J. 593 (1988); Metuchen I, LLC v. Borough of Metuchen, 21 N.J. Tax 283 (Tax 2004). In one of several prior pretrial opinions, the court determined that any adjustment for remediation costs will be applied to the value of the entire approximately 1,200-acre parcel, and not just the portion of the parcel that was contaminated.

In addition, the parties acknowledge that on a portion of the property there is a known and documented presence of threatened and endangered plants and animal species. The extent, if any, to which the presence of these threatened and endangered species will have an effect on the development potential of the subject property, and, as a result, its true market value, is in dispute.

---

[2] BASF Corp. also filed a Complaint challenging the tax year 2010 assessment on Block 411, Lot 107, commonly known as 1304 Route 37 West. That Complaint carries Docket No. 004486-2010. It is not clear from the record whether the challenge to the assessment on this parcel raises issues in common with the challenge to the assessment on Block 411, Lot 6. Plaintiff's Notice of Motion does not list Docket No. 004486-2010. The court, therefore, does not consider Block 411, Lot 107 in this Opinion.

6

Finally, the parties agree that a portion of the subject property was never contaminated and is not burdened by the presence of threatened and endangered species. The development potential of this portion of the parcel is likely to be a significant factor in determining true market value.

On each of the valuation dates, the subject property was zoned for a variety of industrial and commercial uses. Development of the subject property for residential use was not permitted.

In April 2006, the municipality designated the subject property as an area in need of redevelopment. A year later, in April 2007, as part of a mediation between plaintiff and the municipality on a number of issues, including plaintiff's challenge to the designation of the subject property as an area in need of redevelopment, plaintiff, with the assistance of a real estate broker, issued a request for proposals ("RFP") from experienced development entities to take responsibility as master developer of the property. The RFP states that the master developer would work in conjunction with the municipality and Ciba to create and implement an approved redevelopment plan for the site and that the municipality will not consider proposals that concentrate on residential development as the dominant component of the development plan. The three responses to the request for proposals, however, each included an element of residential development of the subject, along with other commercial and recreational uses.

The redevelopment of the property never took place. Nor did municipal officials change the zoning in place at the subject property to accommodate residential development.[3]

---

[3] The court also notes that during the relevant periods, the subject property was the subject of extensive litigation. The then-pending suits included: (1) a suit initiated by the township to compel removal of an allegedly leaking landfill on the subject property; (2) a suit initiated by the New Jersey Department of Environmental Protection to recover natural resource damages resulting from contamination of the subject property; (3) a suit initiated by residents living in close proximity to the site for damages resulting from contamination on the subject property; and (4) as noted above, a suit initiated by Ciba to rescind the municipality's designation of the subject parcel as an area in need of redevelopment.

7

After protracted motion practice, the court determined that the complexity of the issues raised in these matters warranted bifurcation of the trial. The court held that the first phase of the trial would seek to resolve the issue of whether there was a reasonable probability on the relevant valuation dates that there would be a change in zoning to permit any portion of the subject property to be developed for residential use. This standard is consistent with the Supreme Court's holding in Commissioner of Transportation v. Caoili, 135 N.J. 252, 264 (1994), in which the court determined that a fair market value determination for just compensation purposes after a condemnation could be determined based on a reasonable probability that the zoning in place on the date of condemnation would change.

The municipality takes the position that there was a reasonable probability of such a zoning change consistent with the township's designation of the subject property as an area in need of redevelopment. Plaintiff takes the position that a change in zoning at the subject property to permit residential uses was not a reasonable probability on the relevant valuation dates, given the property's history as a Superfund site, ongoing remediation of significant amounts of contamination, and regulatory restrictions, including environmental restrictions, burdening the property on the relevant valuation dates.

In light of the parties' positions, the court held that the burden of proof on the issue of reasonable probability of a zoning change rests with the municipality, as the party arguing that the highest and best use of the subject property is a use other than that to which the property was put on the relevant valuation dates. See Clemente v. Township of South Hackensack, 27 N.J. Tax 255, 267-69 (Tax 2013), aff'd, 28 N.J. Tax 337 (App. Div. 2015). In addition, the court, with the consent of the parties, held that any proffer of evidence on this point would be tied to the residential densities and layouts set forth in the January 24, 2014 report of MASER Consulting ("Maser"), an

8

expert planning report prepared for the municipality that offers several potential development scenarios for the subject property.

According to the court's February 10, 2017 Case Management Order, the parties were to serve on their opponents and the court "trial-ready expert report(s)" offering an opinion on the reasonable probability of residential redevelopment of the subject property during the time periods relevant to these matters for all tax years.

On April 17, 2017, plaintiff filed with the court a letter indicating that it would rely on three expert reports: (1) Paulus, Sokolowski and Sartor, LLC's ("PS&S") Analysis of Development Potential dated October 2012; (2) PS&S Analysis of Development Potential Addendum dated April 2017; and (3) Integra Realty Resources – Reasonable Probability of a Zone Change or Variance dated April 2017. Plaintiff stated that it had already served the October 2012 PS&S report on the municipality and that it would serve the other two reports on defendant on April 17, 2017.

The municipality, on the other hand, filed a letter with the court on April 17, 2017 indicating, in effect, that it would rely on two reports prepared by Maser. The first report, which is referenced above, is dated January 24, 2014. Four people, none of whom is a licensed real estate appraiser, sign that report. The second report is dated June 19, 2015, is labeled as an Addendum to the January 2014 report, and contains a "supplement to the Ecological Review contained" in the original report to "expand on . . . guiding ecological/environmental principles and prior experience in dealing with the NJDEP on similar projects within environmental planning areas such as the State's CAFRA Zone." Maser Report 06/19/2015 p. 2. The June 2015 Addendum is signed by the same four persons who signed the first report. The municipality intends to call the principal author of the report and addendum as its expert witness.

9

In addition, the municipality produced a seven-paragraph certification of a certified general real estate appraiser. The certification states that the appraiser is "quite familiar" with the subject property and provides four substantive paragraphs:

> 4. There are a number of factors that go into a reasonable probability of a zoning change, and of a determination of highest and best use.
>
> 5. Understanding the physical characteristics and use potential of the site is essential for analysis of all aspects of highest and best use. Therefore, the amount of developable land area is an important factor.
>
> 6. Based on market trends, it is reasonable to assume that the development market would pursue some form of mixed use development on well located large tracts of land within the general area.
>
> 7. There are multiple examples of this type of development within the general market area. In many cases the local municipality has accommodated modifications to current land use regulations to permit mixed use development on this class of property.

On April 18, 2017, plaintiff moved pursuant to R. 4:46-4 for partial summary judgment. The motion seeks to conclude the first phase of the bifurcated trial with an Order directing that in the absence of expert testimony from a real estate appraiser the municipality cannot meet its burden to prove that a change in zoning to permit residential development at the subject property was reasonably probable on any of the relevant valuation dates. In addition, plaintiff argues that the opinion upon which the municipality intends to rely is an inadmissible net opinion. Plaintiff therefore request that the court proceed directly to the valuation phase of these matters, during which the court will determine the true market value of the subject property using a highest and best use consist with the zoning in place at the subject property on the relevant valuation dates.

The municipality opposes the motion, arguing that it need not present the testimony of a licensed real estate appraiser to establish a reasonable probability of a zoning change at the subject

10

property. In addition, the municipality argues that the reports of its proposed expert contain sufficient data and facts on which the expert relied to render his opinion admissible evidence.

The court heard oral argument from counsel on the motion.

## II. Conclusions of Law

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

The court need not determine factual questions in order to resolve plaintiff's summary judgment motion. The question posed is legal in nature: whether the municipality, in light of the expert testimony upon which it intends to rely, will, as a matter of law, be unable to meet its burden of establishing that as of the relevant valuation dates, a change in zoning at the subject property was reasonably probable.

The court reviews plaintiff's motion against the backdrop of settled law regarding highest and best use analysis. A determination of the subject property's highest and best use on the relevant valuation dates is an essential element of determining true market value. In Clemente, supra, 27 N.J. Tax at 267-69, Judge Andresini succinctly explained the legal precedents that guide this court in making a highest and best use determination:

For property tax assessment purposes, property must be valued at its highest and best use. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 300-01, 604 A.2d 580 (1992). "Any parcel of land should be examined for all possible uses and that use which will yield the highest return should be selected." Inmar Associates, Inc. v. Township of Edison, 2 N.J. Tax 59, 64 (Tax 1980). Accordingly, the first step in the valuation process is the determination of the highest and best use for the subject property. American Cyanamid Co. v. Township of Wayne, 17 N.J. Tax 542, 550 (Tax 1998), aff'd, 19 N.J. Tax 46 (App. Div. 2000). "The concept of highest and best use is not only fundamental to valuation but is a crucial determination of market value. This is why it is the first and most important step in the valuation process." Ford Motor Co. v. Township of Edison, 10 N.J. Tax 153, 161 (Tax 1988), aff'd o.b. per curiam, 12 N.J. Tax 244 (App. Div. 1990), aff'd, 127 N.J. 290, 604 A.2d 580 (1992); see also Gen. Motors Corp. v. City of Linden, 22 N.J. Tax 95, 107 (Tax 2005).

The definition of highest and best use contained in The Appraisal of Real Estate, a text frequently used by this court as a source of basic appraisal principles, has remained relatively constant for all of the years under appeal. Highest and best use is defined as:

> The reasonably probable and legal use of vacant land or improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value.
>
> [Appraisal Institute, The Appraisal of Real Estate, 22 (13th ed. 2008).]

The highest and best use analysis requires sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive. Ford Motor Co., supra, 10 N.J. Tax at 161; see also The Appraisal of Real Estate at 279. Implicit in this analysis is the assumption that the proposed use is market-driven; in other words, that it is determined in a value-in-exchange context and that there is a market for such use. WCI-Westinghouse v. Township of Edison, 7 N.J. Tax 610, 616-17 (Tax 1985), aff'd o.b. per curiam, 9 N.J. Tax 86 (App. Div. 1986). A highest and best use determination is not based on value-in-use because the determination is a function of property use and not a function of a particular owner's use of subjective judgment as to how a property should be used. See Entenmann's Inc. v. Borough of Totowa, 18 N.J. Tax 540, 545 (Tax 2000). The highest and best

use of an improved property is the "use that maximizes an investment property's value, consistent with the rate of return and associated risk." Ford Motor Co., supra, 127 N.J. at 301, 604 A.2d 580. Further, the "actual use is a strong consideration" in the analysis. Ford Motor Co., supra, 10 N.J. Tax at 167.

Highest and best use is not determined through subjective analysis by the property owner. The Appraisal of Real Estate at 279. The proper highest and best use requires a comprehensive market analysis to ascertain the supply and demand characteristics of alternative uses. See Cherry Hill, Inc. v. Township of Cherry Hill, 7 N.J. Tax 120, 131 (Tax 1984), aff'd, 8 N.J. Tax 334 (App. Div. 1986). Additionally, the proposed use must not be remote, speculative, or conjectural. Id. If a party seeks to demonstrate that a property's highest and best use is other than its current use, it is incumbent upon that party to establish that proposition by a fair preponderance of the evidence. Penn's Grove Gardens, Ltd v. Borough of Penns Grove, 18 N.J. Tax 253, 263 (Tax 1999); Ford Motor Corp., supra, 10 N.J. Tax at 167. Property should be assessed in the condition in which it is utilized and the burden is on the person claiming otherwise to establish differently. Highview Estates v. Borough of Englewood Cliffs, 6 N.J. Tax 194, 200 (Tax 1983).

The Tax Court has, on a number of occasions, considered the probability of a zoning change, or the issuance of a variance, when determining the highest and best use of real property for purposes of finding true market value. See Hoechst Celanese Corp. v. Township of Bridgewater, 12 N.J. Tax 532, 539 (Tax 1992)("The property must be valued in its existing zoning use unless there is a probability of a change in zoning."); Linwood Properties, Inc. v. Borough of Fort Lee, 7 N.J Tax 320, 335 (Tax 1985)(The "circumstances concerning the variance application clearly suggest the existence of a reasonable probability that the request would be granted . . . .").

Notably, in Romulus Dev. Corp. v. Town of West New York, 7 N.J. Tax 305 (Tax 1985), aff'd sub nom, Romulus Dev. Corp. v. Township of Weehawken, 9 N.J. Tax 90 (App. Div. 1987), Presiding Judge Lasser considered facts similar to those presently before the court. There, the taxpayer challenged the assessment on a large parcel of land fronting the Hudson River on which were located valueless improvements associated with an abandoned use of the property as a

railroad marshalling yard. The parcel spanned two municipalities. The portion of the property in Weehawken Township was zoned for industrial, office park, or recreational uses. The portion of the property in West New York Town permitted low-density residential development. Id. at 310.

The court summarized the positions of the parties with respect to the highest and best use of the property as follows:

> The experts disagree on the highest and best use of the subject property. Taxpayer's expert finds the highest and best use of the property to be its permitted zoned use. The taxing districts' expert, however, concludes that a zoning change is reasonably foreseeable based on the renewed interest in Hudson County waterfront properties. Many waterfront properties are in the planning or development stages for combined residential and commercial use. Therefore, it is the expert's opinion that the highest and best use of the subject property is as a planned development for residential and commercial use, with a higher density of use than under the existing zoning.
>
> [Ibid.]

The court heard testimony from two licensed real estate appraisers with respect to highest and best use. After considering the evidence, Judge Lasser did not find credible the opinion that a zoning change at the subject property was probable on the relevant valuation dates:

> I do not accept the conclusion of the expert for the taxing districts that the subject property should be valued . . . as if it were zoned to permit higher density, planned development of mixed residential and commercial uses. Obtaining permission from two towns for a zoning change for a tract lying within their borders and from the Department of Environmental Protection, the Corps of Engineers and other regulatory bodies would require a substantial period of time, with hurdles and hazards along the way that might defeat such a zoning change. The proofs do not support a finding that there was a probability of a zoning change in the near future.
>
> [Id. at 318 (citations omitted).]

Judge Lasser's explanation for the basis of his conclusion regarding the probability of a zoning change provides guidance with respect to the factors that will be relevant to this court's

14

consideration of the expert testimony at trial. Those factors include, but are not limited to: (1) market interest in development of the subject property or similar properties; (2) the complexity and likelihood of success in securing approvals from local zoning authorities; (3) regulatory restrictions on the property; (4) the complexity and likelihood of success in securing the approval of regulatory agencies; (5) the likely timing of securing necessary approvals; and (6) the "hurdles and hazards along the way that might defeat such a zoning change." Ibid. An examination of the report and addendum of the municipality's proposed expert address exactly these points.

The January 2014 report provides the expert's "professional opinion of the redevelopment potential of the subject property." Maser Report 01/24/2014, p. 5. The "Ecological Review" section of the report "attempts to provide a[n] unbiased assessment of the development potential present on the BASF property in Toms River, New Jersey based upon environmental constraints." Maser Report 01/24/2014, p. 6. That section concludes with an opinion of the "Total Area of Land Disturbance Permitted" at the subject property from the standpoint of ecological-based development restrictions. Maser Report 01/24/2014 p. 13.

The "Environmental Review" section of the report is intended "to provide the results of Maser Consulting's analysis of the redevelopment potential of the" subject property "with respect to documented environmental concerns." Maser Report 01/24/2014 p. 14. After a review of the contamination and remediation at the subject property, the report's author concludes that "the subject BASF site, outside the designated red zone (approximately 90 Acres – see Figure 4), can be redeveloped for a mix of residential or commercial use, in a fashion that is protective of human health, the environmental (sic), and public safety." Maser Report 01/24/2014 p. 19.

The "Planning Review" section of the report details the zoning regulations in place at the subject property during the relevant period. In this section of the report, the author reviews the

15

characteristics of the subject property, as well as the regulatory restrictions that apply to the parcel.

Those restrictions include coastal development statutes, sewer controls, township and county

planning area designations, water quality restrictions, and other regulations. The author opines

that development of the subject property is in alignment with state and county land use planning

policies. In this section of the report, the author opines that

> Under existing zoning, the subject site could yield several million square feet of both large box retail and large box flex office-warehouse space. However, the likelihood of the real estate market to absorb that much space is questionable and the designation of the site by the Township as a redevelopment area indicates that it will be governed by either a redevelopment plan or rezoning that allows a wider variety and more balanced development. The redevelopment area designation also provides a variety of financing options, including long term property tax exemptions (PILOT) and Redevelopment Area Bonds.

> * * *

> The Land Use and Development Regulations do not permit residential use on this site, reflecting long standing local concerns about the cleanup. However, as controls are put in place and more is known about the remediation actions and potential end uses for the site, there will almost certainly be change in the development controls that will at lease provide the option for mixed use and residential development on large portions of the site classified as "unrestricted." Based on the general response of the development community to the two past solicitations by Ciba Geigy and BASF described earlier in this report, we believe the most likely scenario will be either a redevelopment plan (the area was previously declared a redevelopment are as outlined earlier), or a rezoning (Planned Unit Development Overlay or new Town Center District) that will allow a combination of mixed use village and a small amount of flex office-warehouse, surrounded by higher density residential types such as multifamily apartments, townhouses and stacked townhouses. However, it is logical that the portion of the site with existing access from the signalized intersection at St. Catherine Boulevard and frontage on the jughandle of the signalized intersection with Bimini Drive will remain dedicated for large box and support retail.

> [Maser Report 01/24/2014 pp. 34-35.]

16

The report thereafter provides three development scenarios for the subject property. In addition, the report describes Stafford Park, which the report refers to as a "comparable project," in which a former municipal landfill site and former unauthorized dumping ground for storm debris in Stafford Township, Ocean County was redeveloped into 370 acres of retail, residential, and office space. According to the report, that parcel is located in the Pinelands Growth Area, and its redevelopment required approvals from the New Jersey Pinelands Commission, the Department of Environmental Protection, and the Department of Transportation. Importantly, the report provides that the Stafford Township project was originally zoned for industrial use, was heavily forested, contained northern pine snakes and several other endangered animal and plant species, and was designated as a redevelopment area by the municipality. The report contains the opinion that the "case Study of Stafford Park demonstrates that the regional market can support substantial redevelopment on brownfield sites with ecological constraints, even with additional bureaucratic and regulatory layers such as the Pinelands Commission." Maser Report 01/24/2014 pp. 40-41.

N.J.R.E. 702 authorizes the use of expert witnesses:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

There are three basic requirements for the admission of expert testimony:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that such an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [State v. Kelly, 97 N.J. 178, 208 (1984)(citations omitted).]

17

An expert must "be suitably qualified and possessed of sufficient specialized knowledge to be able to express [an opinion] and to explain the basis of that opinion." State v. Moore, 122 N.J. 420, 458-59 (1991)(quoting State v. Odom, 116 N.J. 65, 71 (1989)). When the subject matter of expert testimony "falls distinctly within the province of a particular profession, the witness should generally be a licensed member of that profession." State v. Frost, 242 N.J. Super. 601, 615 (App. Div.), certif. denied, 127 N.J. 321 (1990). A professional license, however, is not required. See e.g., Alliance for Disabled in Action, Inc. v. Continental Prop., 371 N.J. Super. 398, 406 (App. Div. 2004), aff'd o.b., 185 N.J. 339 (2005). Sufficient expertise within the meaning of N.J.R.E. 702 may be obtained from occupational experience. Correa v. Maggiore, 196 N.J. Super. 273, 282 (App. Div. 1984). Ultimately, the qualification of an expert is within the discretion of the trial court, which acts as a gatekeeper for all witnesses and evidence. State v. Torres, 183 N.J. 554, 572 (2005); State v. Krivacska, 341 N.J. Super. 1, 32-33 (App. Div.), certif. denied, 170 N.J. 206 (2001).

These precedents do not support plaintiff's request for relief. There is no precedent that requires a witness to be licensed real estate appraiser in order to offer an opinion with respect to the reasonable probability of a zoning change for a particular property. The court acknowledges, as has the municipality, that the highest and best use analysis is an integral element of a licensed real estate appraiser's formulation of an opinion of true market value. This fact alone, however, does not support a conclusion that, as a matter of law, a witness who does not hold a real estate appraiser license cannot offer an opinion on the reasonable probability of a zoning change.

According to the resume attached to the Maser report and addendum, the witness upon whom the municipality intends to rely has a degree in civil engineering, and extensive experience in providing development-planning advice in New Jersey. He has a number of professional

registrations and affiliations related to engineering and has been a panelist and presenter on several topics related to environmental restrictions on the development of real property. While the court is not making a determination that the proposed witness has sufficient expertise to offer an opinion on the likelihood of a change in zoning at the subject property, it is not possible, based on the motion record, for the court to conclude that as a matter of law the proposed witness cannot qualify as an expert on this point.

At the first phase of the trial in this matter, the municipality will have an opportunity to present its proposed expert witness and to elicit testimony regarding his knowledge, skill, experience, training, and education. Plaintiff, of course, will be provided with an opportunity to cross-examine the witness on those topics and any other appropriate area of inquiry. After hearing the testimony and evaluating the credibility of the witness, the court will make a determination with respect to whether he is qualified to offer the opinion contained in his report and addendum.

Similarly, the court rejects plaintiff's argument that, as a matter of law, the opinion intended to be offered by the municipality's expert is an inadmissible net opinion.

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made know to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

[N.J.R.E. 703.]

An expert's bare conclusions, unsupported by factual evidence or other data, are inadmissible net opinions. State v. Townsend, 186 N.J. 473, 494-95 (2006). An expert must give the "why and wherefore" of her opinion, rather than a mere conclusion. Id. at 494 (citing Rosenberg v. Tovarath, 352 N.J. Super. 385, 401 (App. Div. 2002)); Greenblatt v. City of Englewood, 26 N.J. Tax 41, 54-55 (Tax 2011). An expert's opinion "depends upon the facts and reasoning which form the basis

of the opinion. Without explanation as to the basis, the opinion of the expert is entitled to little weight in this regard." Dworman v. Borough of Tinton Falls, 1 N.J. Tax 445, 48 (Tax 1980)(citations omitted).

Here, the report and addendum of the municipality's intended expert reference detailed facts about the subject property's characteristics and its history as a former industrial site, as well as the property's contamination, and remediation of that contamination. In addition, the report and addendum note the known and documented presence of threatened and endangered plants and animal species on the property, and discuss environmental and other regulations relevant to the development of the property, and the municipality's designation of the property as an area in need of redevelopment. Finally, the report and addendum describe the recent redevelopment of another large, former industrial parcel in Ocean County burdened by environmental restrictions. Whether this data will prove to be a sufficient basis for the expert's opinion is a matter to be determined at trial. The court cannot, based on the motion record alone, determine whether the opinion contained in the report and addendum with respect to zoning change is credible and well supported. It is equally impossible, however, for the court to conclude that, based on the motion record alone, the opinion expressed in the report and addendum is an inadmissible net opinion. That question, too, will be determined at trial.

Plaintiff's motion for partial summary is, therefore, denied.[4]

---

[4] The court notes that the municipality has not indicated that it intends to call as an expert witness the real estate appraiser whose certification was produced by the municipality on April 17, 2017. Given that the municipality has not produced an expert report from that witness, the court considers his certification immaterial to the present motion.